YAZOO STATE BANK *v.* KIMBROUGH.

(Division A.  March 24, 1930.)

[127 So. 265.  No. 28380.]

J. W. Bradford, of Itta Bena, for appellant.

Gardner, Odom & Gardner, of Greenwood, for appellee.

152

**Cook, J.,** delivered the opinion of the court.

The complainant, Mrs. Maude B. Kimbrough, as administratrix de bonis non of the estate of S. M. Kimbrough, deceased, filed a bill of complaint in the chancery court of Leflore county against the Yazoo State Bank, of Leflore county, and, from the decree entered upon the final hearing of the cause, the defendant prosecuted a direct appeal, and complainant a cross-appeal.

The bill of complaint, as finally amended, charged that S. M. Kimbrough, deceased, was for a long period of time prior to his death on the 13th day of November, 1920, cashier of the Yazoo State Bank, the appellant; that C. Dunn, president of said bank, owned the Yazoo Insurance Agency, which maintained offices in the bank building; that her husband, S. M. Kimbrough, cashier of the bank, and a Mr. Nelson, a director of the bank, assisted the president in the operation of this insurance agency, under an agreement by which the profits thereof were divided equally between these three officers of the bank; that during the month of July, 1920, the three named officers of the appellee bank borrowed five thousand dollars in the name of the said insurance agency for the benefit of the bank; that this loan was secured by liberty bonds furnished by these officers of the bank, Mr. Kimbrough depositing three thousand five hundred dollars, Mr. Dunn five hundred dollars, and Mr. Nelson one thousand six hundred dollars of such bonds; that upon the maturity of this loan it was paid by the appellant

bank, and the said bonds were returned; that these bonds were checked by Mr. Dunn, president of the bank, and found to be correct, and that he distributed the same by delivering to the executor of the estate of Mr. Nelson, then deceased, the one thousand six hundred dollars put up by Mr. Nelson, and by retaining the five hundred dollars put up by himself, and placing the three thousand five hundred dollars put up by Mr. Kimbrough in a portfolio which was used by the bank for the purpose of holding securities of that nature, and which was kept in the vault of the bank; that after the death of Mr. Kimbrough the appellant, through its attorney, returned to the appellee three thousand two hundred dollars of these bonds, for which she receipted the attorney; that she was made to understand that the three hundred dollars of bonds unaccounted for would thereafter be returned; but they never were, and she sued for the value thereof.

The bill of complaint further charged that during the year 1915 the state bank examiner, in passing on the assets of the appellant bank, rejected certain notes to the amount of nineteen thousand dollars, and ordered them charged out of the assets of the bank, which was done; that certain officers of the bank put up nineteen thousand dollars in cash, to take the place of these notes, the amounts contributed by them being as follows: A. Mack Kimbrough, president, ten thousand dollars; S. M. Kimbrough, cashier, three thousand dollars; E. V. Cato, director, three thousand dollars; and G. W. Boyles, director, three thousand dollars. It was further charged that it was understood and agreed between the directors and officers of said bank that the said notes which had been charged off of the assets of the bank at the instance of the bank examiner, were to be put aside and carried by said bank as a trust fund for the benefit of the directors who had advanced the money to pay them, and that the proceeds of such notes, when and as collected, should be credited to an account called "Cashier's Account Special;" that thereafter the proceeds from the collec-

tion of said notes were distributed ratably among said directors in proportion to the amounts they had advanced to replace the notes so charged off; that practically all of the said notes were collected and the proceeds distributed among the said directors, and all of them were paid in full, except the said S. M. Kimbrough, deceased, appellee's intestate who, at the time of his death, had due him under the agreement and understanding under which the said notes were taken out of the assets of said bank, his pro rata share of said "Cashier's Account Special," something over three hundred dollars, as appeared from the books of said bank. The bill prayed that the appellant bank be required, in its answer, to make a detailed discovery of its disposition of the three hundred dollars of liberty bonds which had been deposited with it, and also as to the status of the said "Cashier's Account Special," the amounts paid out of said account, and to whom, and when, paid; and also prayed for a decree for such amount as the books of the bank showed was due as the pro rata share of the said S. M. Kimbrough, deceased, in said special account.

The answer filed by the appellant did not make the detailed discovery prayed for, but did show that there had been a balance in this cashier's account of three hundred fifteen dollars, which had been credited by the appellant to interest account, and, upon the final hearing, the chancellor entered a decree awarding to appellee a recovery of this balance, with six per cent. interest, but denied a decree for the return of the liberty bonds, or their value, to the amount of three hundred dollars; and from this decree the bank prosecuted an appeal, and the appellee prosecuted a cross-appeal.

On the direct appeal the appellant contends that the appellee could not recover a pro rata share of the proceeds of the notes charged off the assets of the bank, and collected and deposited in the "Cashier's Account Special," for the reason that the directors of the bank could make no agreement among themselves as to a refund of

the amount advanced by them to the bank, and that any sum contributed by them to the bank, in compliance with the demand of the state bank examiner, was a gift to the bank, regardless of any agreement that they would take out the notes, and collect them and distribute the proceeds ratably among themselves; and in support of this contention it relies on the cases of Wright et al. v. Gurley et al., 133 La. 746, 63 So. 310; Interstate Trust & Banking Co. v. Irwin, 138 La. 325, 70 So. 313; and Edwards v. Alabama Penny-Prudential Savings Bank et al., 200 Ala. 369, 76 So. 285.

The three cases relied upon by appellant, and cited above, hold that "when the directors of a bank in response to a demand of the State Bank Examiner, make good an impairment of the capital stock, sign and discount their personal notes and deposit the proceeds to the credit of the bank, the transaction is a donation or a gift to the bank;" but, on its facts, the case at bar is distinguishable from these cases. The arrangement consummated in this case was, in effect, a sale of the notes to these directors for cash at the face value thereof. In so far as the effect of the transaction on the bank and its assets is concerned, it was the same as if the makers of the notes in question had paid them in full to the bank. The bank assumed no obligation to make good any deficit or loss that these directors might sustain as a result of the failure to collect the notes. It merely received in cash the full face value of securities of doubtful value; and this was all it could have demanded or received from the makers of the notes. The directors who took over these doubtful securities assumed all the risk of realizing thereon, and by this transaction there was no possibility of profit to them or loss to the bank, and there can be no good reason why they should not receive the proceeds of the notes so, in effect, purchased by them.

The appellant next contends that if it is held that the directors who advanced the money for the purchase of these notes are entitled to the proceeds thereof, then the

court below erred in refusing to recognize the claim of G. W. Boyles in and to an undivided one-half of the balance on hand, and in decreeing a recovery of the entire sum to the appellee. G. W. Boyles is not a party to this proceeding, and has made no claim therein to any part of the balance of this fund. The only reference to a claim of Boyles to any part of the balance of this fund is found in the testimony of one of the officers of the bank that some time in the year 1924 Boyles demanded one-half of the fund. There is, however, abundant testimony in the record to support the finding of the chancellor that Boyles, as well as all other contributors, except S. M. Kimbrough, had been paid in full, and, consequently, upon this point we cannot say that the decree of the chancellor is erroneous.

The appellant next contends that an excessive amount of interest was included in the decree, the contention being that the record does not show any demand for payment of the balance carried in this special account until the filing of this suit, and, therefore, that interest should have been allowed only from the date of the filing of the suit. The amount of interest allowed in the decree of the court is largely in excess of the amount which accrued after the date of the filing of the suit, but the appellee contends that it was shown that in several telephone conversations with officers of the appellant bank she made demand for the payment of this sum long before the suit was filed. We have repeatedly searched the record for some statement, fact, or circumstance in evidence from which the date, or approximate date, of these telephonic conversations could be fixed, but we have been unable to find any. There is nothing in the record to show that there was any fixed and definite date at which the bank was required to disburse this fund, or to fix the date of any demand for payment made prior to the filing of this suit; and, therefore it was error to allow interest for any time prior to the filing of the suit. The decree of the court below will, therefore, be reversed on the direct ap-

peal, and a decree will be entered here in favor of the appellee for three hundred fifteen dollars, with interest at six per cent. from September 19, 1923, the date of filing the original bill of complaint, and the appellee will be taxed with one-third of the cost of such appeal.

On the cross-appeal the contention is that the court below erred in refusing to award the appellee and cross-appellant a recovery of the liberty bonds sued for, or the value thereof. These bonds were put up as collateral security for a loan to the Yazoo Insurance Agency, and it appears from testimony that upon their return they were received by the owner of the insurance agency, who was also vice-president of the bank, and were by him placed in the vault of the bank. The testimony is not entirely clear as to whether these bonds were returned to the insurance agency or to the bank; nor as to the capacity in which the recipient of the bonds was acting when he placed them in the vault of the bank; but, at most, it makes the bank a gratuitous bailee only, and the proof fails to show that the bank was guilty of any negligence in connection with the care and custody of these bonds. Consequently, the decree of the court below will be affirmed on the cross-appeal.

Reversed on direct appeal, and judgment here for appellee, and affirmed on cross-appeal.